UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § | CRIMINAL NO.: H-17-CR-567-S |
| CLYDE WILLIAMS | § § § | |

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, Steven Mellin and Sebastian Edwards, Assistant United States Attorneys and James B. Nelson, Trial Attorney Department of Justice, and the defendant, CLYDE WILLIAMS ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and/or 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One and ~~Two~~ of the Superseding Indictment. Count One charges Defendant with Conspiracy to Commit Murder for Hire, in violation of Title 18, United States Code, Section 1958. ~~Count Two charges Defendant with Intentional Killing while Engaged in Drug Trafficking, in violation of Title 21, United States Code, Section 848(e)(1)(A).~~ Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Superseding Indictment or proven to a jury or judge beyond a reasonable doubt.

2. Defendant understands and agrees that the term of imprisonment for violation of Title 18, United States Code, Section 1958, once the Attorney General of the United States has forestalled any decision on whether the death penalty should be sought, is life. ~~Defendant further understands and agrees that the term of imprisonment for violation of Title 21, United States Code, Section 848(e)(1)(A), once the Attorney General of the United States has forestalled any decision on whether~~

~~the death penalty should be sought, is at least 20 years to life.~~

## Punishment Range

3. The **statutory** maximum penalty for violation of Title 18, United States Code, Section 1958 is imprisonment for life or death and a fine of not more than $250,000. Additionally, Defendant may receive, after imprisonment, a term of supervised release up to five (5) years, pursuant to Title 18, United States Code, Sections 3559(a) and 3583(b).

4. ~~The **statutory** maximum penalty for violation of Title 21, United States Code, Section 848(e)(1)(A) is imprisonment for not less than 20 years or life or death and a fine of not more than $10,000,000. Additionally, Defendant may receive, after imprisonment, a term of supervised release for at least five (5) years, pursuant to Title 18, United States Code, Sections 3559(a) and 3583(b).~~

Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation, Title 18, United States Code, §§ 3559(a) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

5. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

6. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

## Cooperation

7. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

8. Defendant understands and agrees that the language "fully cooperate," as used herein, includes providing all information relating to any criminal activity known to Defendant. Defendant understands that such information includes both state and federal offenses arising therefrom. In that

regard:

     (a)    Defendant agrees that this Plea Agreement binds only the United States Attorney for the Southern District of Texas and Defendant, and that it does not bind any other United States Attorney or other component or unit of the Department of Justice;

     (b)    Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this Agreement;

     (c)    Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

     (d)    Defendant agrees to provide truthful, complete, and accurate information and testimony and understands any false statements made by Defendant to the grand jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

     (e)    Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

     (f)    Should the recommended departure, <u>if any</u>, not meet Defendant's expectations, Defendant understands he remains bound by the terms of this Agreement and that he cannot, for that reason alone, withdraw his plea.

9. Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the Defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 125 S. Ct. 738 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

10. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

**The United States' Agreements**

11. The United States agrees to each of the following:

   (a) At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two (2)-level downward adjustment under § 3E1.1(a) of the Sentencing Guidelines should Defendant accept responsibility as contemplated by the Sentencing Guidelines (U.S.S.G.);

   (b) If Defendant pleads guilty to Count One ~~and Two~~ of the Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss Counts Three and Four at the time of sentencing; AND COUNT TWO and

   (c) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

**Agreement Binding - Southern District of Texas Only**

12. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Superseding Indictment. This Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this Plea Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

13. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

> (a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;
>
> (b) to set forth or dispute sentencing factors or facts material to sentencing;
>
> (c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;
>
> (d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and
>
> (e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

14. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

15. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> (a) If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree;
>
> (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and
>
> (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

16. Defendant is pleading guilty because he is in fact guilty of the ~~charges~~ [COUNT ONE] contained in the Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

From in or about 2012 until in or about 2016, co-conspirator Ronald Brown ("Brown") ran a drug organization that purchased multiple kilogram quantities of cocaine, a Schedule II controlled substance, and distributed the cocaine in Houston, in the Southern District of Texas, and elsewhere, including Atlanta, Georgia. The total amount of cocaine distributed by the organization at the direction and control of Brown was well in excess of 5 kilograms or more of cocaine and was, in fact, in excess of 100 kilograms of cocaine.

On or about December 23, 2013, in Atlanta Georgia, an off-duty Drug Enforcement

7

Administration agent seized a shipment of cocaine, in excess of approximately 24 kilograms of cocaine. The agent witnessed Marcus Celestine, an associate of Brown, transfer the cocaine from his vehicle to a vehicle driven by Brown's main connection in Atlanta, Ricky Nuckles. Brown directed his associates to transport the cocaine from Houston to Atlanta.

In or about mid-April 2014, codefendant David Roberts ("Roberts") was planning on taking a shipment of multiple kilograms of cocaine from Houston to Atlanta on behalf of Brown. When Roberts received two large duffel bags filled with kilograms of cocaine from E.W. (a co-conspirator of Brown in Houston), Roberts was robbed by another man, later identified by Brown to be Marcus Celestine.

In or about late April 2014, Brown concluded that E.W. and Marcus Celestine stole the multiple kilograms of cocaine from Roberts and Brown began to assemble a plan to kill both men for stealing Brown's cocaine. On or about April 23, 2014, at 9715 Bertwood Street, Houston, Texas, Brown and other conspirators kidnapped E.W. by using zip ties to bind E.W.'s hands and feet and put him in the trunk of a vehicle to be driven to another location where he was to be assaulted and murdered. While being transported in the trunk of the vehicle, E.W. broke free of the bindings, jumped out of the trunk of the vehicle, and ran down Tidwell, a public roadway in Houston, Texas, seeking assistance. R.G., an unrelated passerby driving another vehicle on Tidwell, saw E.W. in the street and picked up E.W. in R.G.'s vehicle in hopes of transporting E.W. to safety. Brown and another person pursued the vehicle driven by R.G. Brown repeatedly fired a firearm at R.G. and E.W. from a short distance, striking R.G. in the upper body and E.W. in the head. Both men survived the attempted deadly assault.

After his failed attempt to kill E.W., Brown turned his attention to killing Marcus Celestine. In or about May and June 2014, Brown met with an associate, R.R., and several

members of his drug organization at several locations within the Southern District of Texas, to further discuss the murder of Marcus Celestine. R.R. advised Brown about **CLYDE WILLIAMS'** criminal history and agreed to broker a deal to have **WILLIAMS** murder Marcus Celestine. Brown agreed to pay **WILLIAMS** at least $20,000 in United States currency to carry out the murder.

In or about June 2014, R.R. met with **WILLIAMS** to discuss killing Marcus Celestine. R.R. explained that Brown believed Celestine stole drugs from him and wanted him killed as retribution. R.R. further explained to **WILLIAMS** that Brown had been trying to catch up with Celestine for a couple of months and could not find where he lived. **WILLIAMS** agreed to carry out the job for at least $20,000.

In or about June 2014, Brown provided an FN handgun, a firearm manufactured outside the State of Texas, to R.R. to be used by **WILLIAMS** to murder Marcus Celestine. On or about June 10, 2014, Brown contacted his Parole Officer, J.W., to inquire about the date, time, and location of Marcus Celestine's next appointment with the Office of Probation and Parole. Although unauthorized to do so, J.W. told Brown that Marcus Celestine was scheduled to meet with his Parole Officer at the Houston One District Parole Office located at 4949 West 34th Street, Houston, Texas, in the Southern District of Texas, on the morning of July 1, 2014. In or about late June 2014, Brown informed R.R. of Celestine's parole meeting on or about July 1, 2014, and R.R. passed the information to **WILLIAMS**.

On or about July 1, 2014, according to the plan created by Brown, **WILLIAMS** drove a Ford Taurus to the Houston One District Parole Office located at 4949 West 34th Street, Houston, Texas, in the Southern District of Texas, to shoot and kill Marcus Celestine with the FN handgun provided by Brown. **WILLIAMS** repeatedly shot and killed Marcus Celestine,

after Celestine returned to his vehicle following his meeting at the Parole Office. **WILLIAMS** fired a number of shots at Marcus Celestine, as Celestine sat in the driver's seat of his vehicle. **WILLIAMS** walked away but quickly returned and fired several more shots at Marcus Celestine from a close range. Marcus Celestine died on the scene in the parking lot of the Parole Office from multiple gunshot wounds. The police recovered at least nine (9) shell casings on the scene. An autopsy determined that the cause of Marcus Celestine's death was multiple gunshot wounds and the manner of death was homicide. On or about July 1, 2014, after the murder, R.R. and **WILLIAMS** met Brown, at a location on Highway 6 in the Southern District of Texas, where Brown provided **WILLIAMS** approximately $20,000.00 in U. S. currency for carrying out the murder of Marcus Celestine.

### Breach of Plea Agreement

17. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

18. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to

dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

19. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

20. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

21. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

**Restitution**

22. Defendant agrees to pay full restitution to the victims regardless of the counts of conviction. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victims. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment.

## Forfeiture

23. Defendant stipulates and agrees to forfeit all property that constitutes, or is derived from, or is traceable to the proceeds obtained directly or indirectly from the commission of the offense as charged in the Superseding Indictment and all property that was used to facilitate, or was intended to be used to facilitate, the commission of the offenses charged in Counts One and Two of the Superseding Indictment.

24. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

25. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

## Fines

26. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment.

## Complete Agreement

27. This written plea agreement, consisting of 14 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

28. Any modification of this plea agreement must be in writing and signed by all parties.

Filed in Houston, Texas, on November 21, 2019.

*Clyde Williams*
Defendant

Subscribed and sworn to before me on November 21, 2019

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Ryan K. Patrick
United States Attorney

By: _____
Steven D. Mellin
Sebastian Edwards
Assistant United States Attorneys
1000 Louisiana St. Ste 2300
Houston, Texas 77002

_____
David Adler
Attorney for Clyde Williams

13

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO.: H-17-567-S |
| CLYDE WILLIAMS | § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Superseding Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____  11/21/19
Defendant's Attorney               Date

I have consulted with my attorney and fully understand all my rights with respect to the Superseding Indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_Clyde Williams_                   11/21/19
Defendant                          Date

14